# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Station Casinos LLC,

    Plaintiff,

v.

Chartwell Advisory Group, Ltd., et al.,

    Defendants.

Case No.: 2:14-cv-661-JAD-VCF

**Order Granting Motion to Remand [Doc. 7]**

    Nevada entity Station Casinos, LLC sued Pennsylvania company Chartwell Advisory Group, Ltd. and its Nevada attorney John Bartlett, Esq. in Nevada State Court, asking for a judicial declaration that Station owes no fees to either Chartwell or Bartlett for fruitless efforts to get Station a refund of overpaid state taxes. Doc. 1-1. Chartwell and Bartlett removed the case to federal court, suggesting that there is complete diversity as the court must disregard the Nevada citizenship of Bartlett because he was fraudulently joined. Doc. 1 at 4. I now grant Station's motion to remand because defendants have not presented clear and convincing evidence to overcome the presumption that Bartlett was properly joined, and I remand this case back to the Eighth Judicial District Court, Case No. A-13-692673-C.

## Background

    Station alleges that in 2002, its predecessor company inked a professional services agreement with Chartwell, which "agree[d] to use its best efforts to obtain refunds or credits of overpaid sales and use taxes, hotel taxes, business taxes, entertainment taxes and B&O takes for" a number of Station-controlled casino entities. Doc. 1-1 at 6. The agreement entitled Chartwell to 40% of the total refunds it collected and contemplated that "legal fees, court costs, expert witness, etc., shall be offset against" the total amount refunded to Station. Doc. 1-2 at 2. It further provided that "[a]ll appeals for refund requiring representation by outside legal counsel shall be undertaken only by the mutual consent of both [Station] and Chartwell." *Id.* Chartwell hired Bartlett as its outside legal counsel for this purpose. Doc. 15-1. The Chartwell-Bartlett contract does not mention Station directly, but states only that Bartlett will be representing "Chartwell and its client companies." *Id.* at

1. Bartlett declares that he believed that although he had an attorney-client relationship with Station, he did not enter into any separate fee arrangement with Station and never discussed his fee arrangement with Station. Doc. 15 at 2. Chartwell's President, Stephen F. Deviney, declares that he "viewed Chartwell's obligation to Bartlett as a separate contractual matter from Station's obligation to Chartwell." Doc. 14 at 4.

On May 31, 2013, the Nevada Department of Taxation settled a dispute regarding complimentary meals with a number of casino entities, including Station. Doc. 1-1 at 7. Station's recovery was prospective only: Station received no refund, just an agreement that future complimentary meals will not be taxed. *Id.* Station alleges that on June 21, 2013, Chartwell invoiced Station for "millions of dollars in supposed contingency fees," which includes charges for "work supposedly performed by Bartlett allegedly on behalf of Station." *Id.* These invoices, characterized as "fee for services," include Bartlett's legal fees and expenses. *See* Docs. 14-3 at 2, 14-5.

Station filed this action against Chartwell and Bartlett on December 5, 2013, in state court, seeking two declarations under Nevada state law: (1) that it "owes nothing to Chartwell based upon the terms of the Agreement," and (2) that it "owes nothing to Bartlett for work he allegedly performed." Doc. 1-1 at 9. Defendants jointly removed the suit to this court on April 30, 2014. Doc. 1.[1] Doc. 1 at 3. Station filed the instant motion to remand on May 30, 2014. Doc. 7.

**Discussion**

28 U.S.C. § 1441(b) allows for removal to federal court based on diversity of citizenship. Under 28 U.S.C. § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." If the court finds that it lacks jurisdiction over the case, it should remand the case to state court pursuant to 28 U.S.C. § 1447(c). "[T]he defendant

---

[1] In their petition for removal, defendants explain that this case is related to another case currently pending in federal court: *Sierra Development Company v. Chartwell Advisory Group*, 13-cv-602-RFB-VPC (D. Nev.) ("Sierra Case"). 13-cv-602 has been consolidated with *Caesar's Entertainment Operating Co., Inc.*, 13-cv-2234-RFB-VPC (D. Nev.), with 13-cv-602 designated as the lead case. *See, e.g.*, 13-cv-602, Doc. 4.

always has the burden of establishing that removal is proper."[2] The court's subject matter jurisdiction may be attacked either facially or factually.[3] In so doing, a litigant may "rely on affidavits or any other evidence properly before the court."[4] When a challenge to subject matter jurisdiction has been properly raised, the opposing party must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."[5]

The parties dispute whether defendant Bartlett, a Nevada citizen, was properly joined as a defendant or whether he was included merely to destroy diversity. When a defendant is fraudulently joined, his citizenship is not considered in determining the parties' diversity.[6] "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."[7] The party asserting fraudulent joinder must overcome "both the strong presumption against removal and the general presumption against fraudulent joinder"[8] and must prove fraudulent joinder by clear and convincing evidence.[9]

Nevada's declaratory judgment act gives courts the "power to declare rights, status and other legal relations whether or not further relief is or could be claimed."[10] A plaintiff states a declaratory relief claim under Nevada law by pleading (1) the existence of a justiciable controversy; (2) the

---

[2] *Gaus v. Miles, Inc.*, 980 F.2d 564, 568 (9th Cir. 1992).

[3] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[4] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

[5] *Id.*

[6] *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

[7] *Id.* (quotation omitted).

[8] *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009).

[9] *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

[10] NRS § 30.030.

adverse interests of the parties to the controversy; (3) that the party seeking the declaration has a legally protectable interest; and (4) that the issue before the court is ripe for judicial determination.[11]

Station has requested a declaratory judgment that it "owes nothing to Bartlett for work he allegedly performed." Doc. 1-1 at 9. The parties' disagreement over the viability of this request boils down to whether the professional services agreement between Station and Chartwell permits Bartlett to seek any allegedly outstanding attorney's fees directly from Station, and whether Bartlett has effectively disavowed any recovery by affirming that although he believed Station was a client to whom he owed duties of loyalty and honesty, he "do[es] not plan to seek fees directly from Station, either by sending an invoice directly to Station or by bringing suit against Station." Doc. 15 at 2-3. This argument implicates the first, second, and fourth factors of the declaratory judgment test.

The Station-Chartwell professional services agreement does not clarify that selection, retention, and payment of Bartlett was Chartwell's responsibility alone; it provides only that "[a]ll appeals for refund requiring representation by outside legal counsel shall be undertaken only by the mutual consent of both [Station] and Chartwell." Doc. 14-1 at 2. The absence of a separate agreement between Station and Bartlett, as well as Deviney's sworn attestations that "Bartlett does not have a fee arrangement with Station" and that he "viewed Chartwell's obligation to Bartlett as a separate contractual matter from Station's obligation to Chartwell," Doc. 14 at 3-4, are similarly unpersuasive. First, Bartlett believed that he stood in an attorney-client relationship with both Station and Chartwell. Doc. 15 at 2. Second, Chartwell's invoices show at least potential confusion over the parties' respective obligations for Bartlett's fees, as they include separate line items on Chartwell's invoices to Station for Bartlett's services, which were added to Chartwell's total fee. *See* Doc. 14-5. If the agreement between Chartwell and Bartlett was wholly separate from the agreement between Chartwell and Station, it is not clear why Chartwell would either include Bartlett's legal fees in its invoices to Station, or itemize them. While defendants suggest that "Chartwell's invoice is no different from a contractor whose invoice includes separate line items for

---

[11] *Knittle v. Porgressive Cas. Ins. Co.*, 908 P.2d 724, 725 (Nev. 1996).

materials and for labor," Doc. 13 at 11, Chartwell invoiced Station for only 75-85% of the total attorney's fees; and it is an open question when, and from whom, the remaining 15-25% payment is expected to come.  In this context, Bartlett's attempted disavowal of any intent to pursue fee collection efforts against Station directly is equivocal at best; he declares only that he "do[es] not *plan* to seek fees directly from Station."  Doc. 15 at 3 (emphasis added).

While the evidence, on balance, may tip slightly in favor of defendants' position, it falls short of the clear and convincing evidence required to demonstrate that Bartlett was fraudulently joined and thus overcome the presumptions against removal and fraudulent joinder.  Because I cannot conclude that defendants carried their clear-and-convincing burden of proof that Bartlett was fraudulently joined, I consider Bartlett's Nevada citizenship in assessing federal jurisdiction and find that Bartlett's inclusion as a defendant destroys diversity and prevents this court from exercising subject-matter jurisdiction over Station's lawsuit.[12]  Accordingly, I remand this case back to Nevada's Eighth Judicial District Court pursuant to 28 U.S.C. § 1447(c).

### Conclusion

Accordingly, based upon the foregoing reasons and with good cause appearing and no reason for delay,

It is **HEREBY ORDERED** that Plaintiff's Motion to Remand **[Doc. 7] is GRANTED**; the Clerk of Court is instructed to remand this case back to the Eighth Judicial District Court, Case No. A-13-692673-C, and close this matter.

DATED: December 15, 2014.

_____
Jennifer A. Dorsey
United States District Judge

---

[12] Although defendants also argue that I should retain jurisdiction over this case under the *Brillhart* test, reaching the merits of this argument requires me to find that Bartlett was not fraudulently joined.  Since I have not done so, I do not reach the merits of this second argument.